Entered on Docket
September 12, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed September 12, 2011

_____
 **Charles Novack**
 **U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CEDAR FUNDING, INC., | Case No. 08-52709-MM |
| Debtor. | Chapter 11 |
| R. TODD NEILSON, Trustee for Debtor, CEDAR FUNDING, INC., | Adversary No. 09-5260 |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT** |
| WILLIAM M. DWYER, | |
| Defendant. | |

**INTRODUCTION**

In this adversary proceeding, R. Todd Nielson, the Chapter 11 trustee of Cedar Funding, Inc.'s bankruptcy estate (the "Chapter 11 Trustee")[1], seeks to avoid and recover the transfer of the debtor's interest in a note and deed of trust to defendant William M. Dwyer ("Dwyer"). While the Chapter 11

---

[1] Under the Chapter 11 Trustee's confirmed plan of reorganization, Russell Burbank now serves as the plan administrator, and he now holds the funds at issue in this adversary proceeding. To the extent that Burbank is now the real party in interest, the court, for ease of convenience, shall also refer to him as the "Chapter 11 Trustee."

Trustee's complaint alleges both preferential transfer and fraudulent conveyance claims for relief, his summary judgment motion only seeks a recovery under Bankruptcy Code § 547.

## PROCEDURE ON SUMMARY JUDGMENT

Summary judgment is appropriate when the evidentiary proof offered by the moving party shows that there is no genuine issue of material fact and the moving party is entitled to a determination as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. Rule 56. To prevail, the Chapter 11 Trustee must provide evidence establishing all the elements of his preferential transfer claim. *Lockwood v. Wolf Corp.,* 629 F.2d 603, 611 (9th Cir. 1980).

Dwyer has asserted fourteen affirmative defenses to the Chapter 11 Trustee's complaint. Dwyer bears the burden of proof on his affirmative defenses, and the catalog of defenses in the answer, without more, is insufficient to avoid summary judgment. *Johnson v. Georgia-Pacific Corp.*, 2009 WL 1311896 at *2 (9th Cir. May 12, 2009); *In re MarchFirst, Inc.*, 2007 WL 4105816, at *5 (Bankr. N.D. Ill. Nov. 15 2007), *citing*, *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553. At a minimum, Dwyer must offer sufficient evidence to raise a triable issue of fact as to each element of any defense that he wants to pursue. To the extent that he has done so, his defenses are discussed below.

## FACTS

CFI's operations are well explained in several, earlier decisions issued by this court. *See e.g., Rollins v. Nielson (In re Cedar Funding, Inc.)*, 408 B.R. 299 (Bankr. N.D. Cal. 2009), and *Nielson v. Aiken (In re Cedar Funding, Inc.)*, 2009 WL 2849122 (Bankr. N.D. Cal. Jul. 20, 2009). To the extent applicable, they are re-stated herein, along with the facts specific to this adversary proceeding. As required, these facts are stated in a light favorable to Dwyer, the non-moving party.

In 2003, David A. Nilsen, a licensed real estate broker, incorporated CFI and began to operate his brokerage business through the company. From CFI's inception, Nilsen was its president and sole shareholder. Before it filed its Chapter 11 case on May 26, 2008, CFI made loans secured by trust deeds against its borrowers' real property, and it funded its operations through hundreds of investors who sought to acquire fractional interests in the secured loans that CFI originated.

It was CFI's standard practice to deposit the investor funds into a general account known as the "escrow account" that CFI maintained at Wells Fargo Bank and from which CFI funded loans to its borrowers and, indirectly, made monthly interest payments to its investors. CFI commingled all of its funds in the escrow account, including the funds which it received from its investors and the note payments from its borrowers. Shortly after receiving an investment, CFI typically made a bookkeeping entry associating the invested amount with a particular loan. After CFI associated an investment with a particular note, it made regular, monthly interest payments to the investor regardless of whether the borrower under that note was making loan payments. There is no evidence that CFI deviated from its standard practice with respect to Dwyer's investments.

Dwyer began investing with Nilsen/CFI in 2004. In early 2004, he invested $75,000.00 in a loan request that JoAnne Schmidt had submitted to CFI. Dwyer opened an escrow with a title company to obtain a title report and close the transaction. Schmidt's loan escrow closed on April 9, 2004, and as a result, Dwyer became the beneficiary of a $75,000.00 deed of trust recorded against Schmidt's property located at 856 River Road in Salinas, California (the "2004 Deed of Trust"). The 2004 Deed of Trust references CFI Loan #4862, and lists Dwyer as its sole beneficiary (Dwyer was also the payee of the note; the "2004 Note").

Schmidt sought additional funds from CFI in 2005. In July of that year, Schmidt executed a $250,000.00 promissory note (the "2005 Note," dated July 12, 2005) in CFI's favor and also signed a deed of trust securing the 2005 Note against her River Road property on July 21, 2005 (the "2005 Deed of Trust"). CFI was the sole beneficiary of the 2005 Deed of Trust, and it was recorded on July 21, 2005.

The next day, July 22, 2005, CFI issued a $75,295.55 check made payable to Dwyer. The check stub indicated that the check satisfied the amount due under CFI Loan #4862 (less a $25 service fee). While the check was addressed to Dwyer at his Pacific Grove, California post office box address, the check stub indicated that the check was made payable to "Cedar Funding FBO William Dwyer." The evidence further suggests that this check may have been immediately "rolled over" into a new investment - the 2005 Note and Deed of Trust. Dwyer recalls that sometime before August 3, 2005, Nilsen advised

3

him that Schmidt wanted to borrow an additional $175,000.00, which, if Dwyer was willing, would increase Dwyer's total investment to $250,000.00. Nilsen further represented to Dwyer that the additional loan could be authorized as an advance under the original 2004 Note and Deed of Trust. Dwyer agreed to lend the additional funds. According to Dwyer, the only document that CFI gave him regarding the $250,000.00 investment was a one page "Lender Identification." This document references escrow number 50943 and reflects Schmidt as the borrower. The page contains a one line table that indicates that loan funds of $250,000.00 were "deposited" on July 12, 2005, a date which coincides with Schmidt's execution of the 2005 Note and Deed of Trust. The chart lists Dwyer as the 100% beneficiary of the $250,000.00 loan. Despite the date reflected on the Lender Identification, the parties agree that Dwyer deposited his additional $175,000.00 with CFI on August 3, 2005. This is consistent with CFI's standard practice of funding loans from its commingled escrow account and then, via bookkeeping entry, associating a specific lender with a specific loan when investment funds were received and deposited into the escrow account.

Although not without some dispute, the evidence further indicates that on the same August 3rd date, Dwyer reviewed and executed a "Request for Reconveyance" as well as a "Substitution of Trustee and Full Reconveyance" of the 2004 Deed of Trust that secured Schmidt's original $75,000.00 loan.[2] The reconveyance request states that Schmidt's 2004 Note was paid in full and directs Stewart Title Company, the trustee under the 2004 Deed of Trust, to cancel the 2004 Note and reconvey any estate held. The substitution and full reconveyance substituted Dwyer in as trustee under the 2004 Deed of Trust and reconveyed all interest previously held under the 2004 Deed of Trust to Schmidt. On the same day, Dwyer also executed a "Reinvestment Form" that references Schmidt's initial $75,000.00 loan (Loan

---

[2] In his declaration of March 21, 2010, Dwyer insisted that the 2005 reconveyance was either forged or that he had been tricked into signing a document in which the content had been hidden from him. However, in his April 2010 supplemental declaration, Dwyer is less adamant. While still proclaiming that he does not know how the reconveyance came to be signed, he admits that in 2005, he did not fully examine the Request for Reconveyance, the Full Reconveyance and the Reinvestment Form with the same degree of intensity that he used when he examined them in connection with the pending motion.

4

#4-4862). The form reflects a July 13, 2005 pay-off date for the $75,000.00 loan and Dwyer's request to reinvest the proceeds into CFI's fractionalization program. On August 8, 2005, CFI recorded the full reconveyance executed by Dwyer.

Despite Dwyer's assertion that he did not receive any documents related to the August 3, 2005 transaction other than the Lender Identification discussed above, CFI's records indicate that Nilsen sent CFI's usual investment acknowledgment letter to Dwyer on August 22, 2005, which enclosed CFI's standard documentation regarding Dwyer's "recent" $250,000.00 investment in "Loan No. 4-5128." The letter states that the enclosed loan documentation included a servicing agreement, a purchaser disclosure (which stated that CFI was the note's payee), an assignment of the note and an assignment of the unrecorded deed of trust. Nilsen instructed Dwyer to sign and return the servicing agreement and the purchaser disclosure related to Loan No. 4-5128. The letter also reflects that CFI transmitted two interest checks to Dwyer. One related to the Loan No. 4-5128 for $419.18 representing interest due from July 14 through July 31, 2005. The other check represented interest due on Loan No. 4-4862 (the number assigned to the original $75,000.00 loan) from July 1 through July 13, 2005 (the date the 2004 Note was apparently paid off).

CFI's files contain copies of a loan servicing agreement and a purchaser disclosure that bear Dwyer's signature along with the handwritten date of September 4, 2005. This evidence suggests that Dwyer received the August 22, 2005 acknowledgment letter and its enclosures. Further, Dwyer's April 2010 declaration concedes, at least by implication, that he received the August 22, 2005 package. For example, he states that in 2005 he did not see the reference to CFI as owner on the first page of the purchaser disclosure. CFI was also the beneficiary under the 2005 Deed of Trust.

Two years later, on August 3, 2007, Schmidt executed a "Notice of Advance under Deed of Trust," acknowledging receipt of an additional $130,000.00 from CFI secured by the 2005 Deed of Trust. The notice of advance was not immediately recorded. Instead, sometime that month, Nilsen approached Dwyer and advised him that Schmidt wanted to borrow an additional $130,000.00. Dwyer agreed, and he now contends that he believed that these additional funds would be advanced under the 2004 Deed

of Trust. Dwyer gave CFI $130,000.00 on either August 3 or 30, 2007.[3] On September 5, 2007, CFI recorded the Notice of Advance Under Trust Deed, thereby increasing the total loaned under the 2005 Deed of Trust to $380,000.00.

Dwyer became suspicious when he did not receive any paperwork from CFI regarding the additional $130,000.00 advance and, at some point after transmitting the funds, he checked the county recorder's office and asked CFI to determine the status of his Schmidt loan. Dwyer states that this is when he first learned that 1) there was a recorded Substitution of Trustee and Full Reconveyance of the 2004 Deed of Trust; 2) his $250,000.00 investment was loaned to Schmidt under the 2005 Note and Deed of Trust, and that these funds were not advances under the 2004 Note and Deed of Trust; and 3) the 2007 advance of $130,000.00 was also under the 2005 Note and Deed of Trust. Dwyer contends that he always believed that the 2005 and 2007 transactions were advances under his 2004 Note and Deed of Trust.

Immediately after learning of the existence of the 2005 Note and Deed of Trust, Dwyer demanded that CFI transfer the loan into Dwyer's name. In response, Dwyer received a Promissory Note Endorsement[4] and an Assignment of Deed of Trust executed by Nilsen as president of CFI on October 24, 2007. Neither of these documents was immediately recorded. The Promissory Note Endorsement is a one page document that references Loan No. 4-5128 and the July 12, 2005 note executed by Schmidt in the newly increased amount of $380,000. It states that CFI "grants, assigns, endorses and transfers, without recourse . . . all beneficial interent [sic] under the Promissory Note" to Dwyer, together with "the

---

[3]There is conflicting evidence regarding the date of this deposit. Paragraph 5 of Dwyer's March 2010 declaration states that he advanced the funds on August 30th, but in the very next paragraph he refers to August 3rd as the date he forwarded the money. CFI's records indicate that Dwyer made the additional investment in October 2007 and was ascribed an additional interest in the Schmidt note at that time. For purposes of this motion, Dwyer's testimony must be taken as true.

[4]Although the document is entitled "Promissory Note Endorsement," the parties agree that the document is not effective as an endorsement under California's statutory scheme governing negotiable instruments. *See* Cal. Comm. Code § 3204. The parties believe that it operates as an assignment of the 2005 Note.

6

money due an [sic] to become due thereon with interest, and all right accrued or to accrue" under the note.

In March 2008, Dwyer learned that Schmidt was interested in borrowing an additional $60,000.00, which would increase Dwyer's total investment through CFI to $440,000.00. Although willing to advance the additional funds, Dwyer demanded that the transaction be conducted through an escrow with a title company and that a new note and deed of trust covering the entire debt be issued. Dwyer instructed the escrow officer to ensure that the 2005 Deed of Trust was reconveyed and to have a new note and deed of trust issued in Dwyer's name for the entire $440,000.00. On April 8, 2008, Schmidt executed a new promissory note for $440,000.00 in Dwyer's favor and a deed of trust naming Dwyer as beneficiary to secure repayment of the note. Believing everything to be in order, Dwyer delivered his $60,000.00 check to escrow on April 9, 2008, and the transaction closed even though CFI never reconveyed the 2005 Note and Deed of Trust. The 2008 transaction was intended to subsume and replace what was by then a $380,000.00 obligation under the 2005 Note and Deed of Trust.

CFI filed its chapter 11 bankruptcy petition on May 26, 2008.

Over a year later, on June 24, 2009, Dwyer recorded the October 24, 2007 Assignment of Deed of Trust described above. Two days later, before a notary public, Dwyer executed a Substitution of Trustee and Full Reconveyance of the 2005 Deed of Trust. Although Dwyer states that he recorded the reconveyance, the copy of the reconveyance submitted as evidence does not bear a recorder's stamp.

Schmidt has repaid her loan in full, and the Chapter 11 Trustee is holding net proceeds of approximately $403,000.00 pending resolution of this adversary proceeding.

## **LEGAL ANALYSIS**

The Chapter 11 Trustee's motion for summary judgment seeks a legal determination that CFI's estate is entitled to at least $380,000.00 from Schmidt's repayment of her loan because the transfer of the 2005 Note and Deed of Trust to Dwyer was preferential. To succeed on his preference claim, the Chapter 11 Trustee must provide undisputed evidence showing 1) that an interest of CFI in property was

7

transferred to Dwyer; and that the transfer 2) was made within 90 days of CFI's bankruptcy petition, 3) was for Dwyer's benefit, 4) was on account of an antecedent debt, 5) was made while CFI was insolvent, and 6) would allow Dwyer to receive more than he would under a chapter 7 liquidation without the transfer. 11 U.S.C. § 547(b). The parties' dispute focuses on the first two items of proof.

With respect to the first element, Dwyer contends that CFI stole the 2004 Note and Deed of Trust which named him as the beneficiary. As a result of this theft, Dwyer argues that CFI never held a legitimate property interest in any note or deed of trust related to the Schmidt property. Even if CFI had a valid property interest, Dwyer further contends that CFI transferred its full interest in both the 2005 Note and Deed of Trust to Dwyer no later than October 2007, a date well before the 90 day preference period. Dwyer asks the court to deny Chapter 11 Trustee's motion for summary judgment and, despite the absence of a cross-motion, to enter judgment in his favor as a matter of law.

Not surprisingly, the Chapter 11 Trustee contends that this transaction involves a failed sale, not a theft. The Chapter 11 Trustee asserts that Nilsen convinced Dwyer to invest funds with the promise that Dwyer would receive a 100% interest in the Schmidt note and deed of trust. Nilsen then failed to have CFI convey the promised interest to Dwyer. Such conduct was, if nothing else, CFI's Ponzi scheme- inspired modus operandi. The Chapter 11 Trustee further asserts that no transfer occurred or was perfected until CFI complied with all the requirements of §10233.2 of California's Business and Professions Code. By the time the parties complied with this statutory provision and conveyed the promised interest, it was less than 90 days before CFI's bankruptcy petition was filed.

**I.    The 2005 CFI Note and Deed of Trust Constituted an Interest of CFI in Property.**

Dwyer asserts that CFI stole ownership of the 2004 Note and Deed of Trust through larceny by trick when it forged Dwyer's signature or deceived Dwyer into signing a reconveyance of the 2004 Deed of Trust. This argument lacks merit.

The elements of larceny by trick include: 1) a person who obtains possession of property of another by some trick or device, 2) intent by the person obtaining the property to convert the property

8

permanently to his own use, and 3) the lack of the intent by the owner who parted with possession to transfer title to the person who obtained possession. *People v. Traster*, 11 Cal. App. 4th 1377, 1390 (2003). Dwyer contends that CFI "stole" the 2004 Note and Deed of Trust, which named Dwyer as beneficiary. CFI, however, never took possession of that property, by trick or otherwise. Even accepting Dwyer's claim of forgery or trick as true, Dwyer reconveyed his interest in the 2004 Deed of Trust to Schmidt, not CFI, and he received full payment on the 2004 Note. Schmidt then entered into a separate lending transaction with CFI by executing the 2005 Note and Deed of Trust.

Even if the circumstances surrounding the 2005 CFI loan transaction could be molded to fit within the bounds of larceny by trick, the evidence does not raise a triable issue as to whether such a theft occurred. The only suggestion of larceny comes from Dwyer's own declarations submitted in opposition to the Chapter 11 Trustee's motion for summary judgment. In his March 2010 declaration, Dwyer admits that a signature resembling his appears on the reconveyance of his interest in the 2004 Deed of Trust, but he speculates that it is a forgery or that he was tricked into signing the reconveyance. In his supplemental declaration, however, he is less certain about those original speculations. There, he states that he has fully examined the request for reconveyance, the full reconveyance and the reinvestment form, which he "did not do in 2005 with the degree of intensity that [he has] now engaged." At a minimum, this statement implies that he saw the documents in 2005, although he may not have read them well at the time. Speculative, self-serving statements, like those relating to forgery and trick in Dwyer's first declaration do not create a triable question as to whether CFI engaged in theft. *Nilsson v. City of Mesa*, 503 F.3d 947, 952, n.2 (9th Cir. 2007)(conclusory, self-serving affidavit, without supporting facts or evidence, does not create a genuine issue of material fact); *Vaughn v. Donahoe*, 2011 WL 2199245 at *5 (N.D. Cal. Jun. 7, 2011), *citing, Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979)(conclusory speculative testimony in declarations is insufficient to raise genuine issues of fact).

In support of his motion for summary judgment, the Chapter 11 Trustee has offered evidence of the 2005 Note naming CFI as payee, the recorded 2005 Deed of Trust securing repayment of that note

9

and various additional advances under the 2005 Deed of Trust. Based on the evidence, there is no genuine dispute that the 2005 Note and Deed of Trust constituted CFI's property.

**II.     Transfer of the 2005 Note and Deed of Trust Was Made Within the 90 Day Preference Period Preceding CFI's Bankruptcy Petition.**

Under § 547 of the Bankruptcy Code, a transfer is preferential if it "is made" within the 90 day period preceding the petition date. According to § 547(e), a transfer is made:

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time;
> (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days.

11 U.S.C. § 547(e)(2)(A) and (B). Under this definition, the court must consider both when a transfer is effective between the transferor and transferee and when the transfer is perfected to see whether the effective date or the perfection date will control. The court must look to state law to determine the effective date as well as the perfection date. *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1420 (9th Cir. 1985)(relying on Utah law for when a transfer was effective between the parties and when it was perfected against third parties without notice).

Dwyer contends that CFI transferred its entire interest in the 2005 Note and Deed of Trust to him when Nilsen sent Dwyer the executed Promissory Note Endorsement in October 2007. He asserts that the transfer of a note does not require recording and, presumably, that this transfer was therefore perfected upon its execution. He further contends that the transfer of the underlying debt necessarily carried the security, in the form of the deed of trust, with it. As a result, he concludes that CFI's entire interest in the 2005 Note and Deed of Trust was conveyed to him no later than October 2007, and CFI had nothing left to transfer during the preference period. California law, however, does not support Dwyer's position.

10

The 2005 Note appears to be a negotiable instrument under California Commercial Code §3-104(a).[5] For reasons set forth in great detail in *In re Veal*, 450 B.R. 897 (9th Cir. B.A.P. 2011), the Promissory Note Endorsement executed by CFI in October 2007 did not transfer the 2005 Note to Dwyer. Dwyer never physically possessed the 2005 Note, and he therefore never became a "holder" under Commercial Code § 1-201(b)(21)(A) and thus a person "entitled to enforce" the 2005 Note under Commercial Code § 3-301.[6] Without being a "person entitled to enforce" the 2005 Note, Dwyer never had the right to enforce and collect the 2005 Note proceeds (which is exactly what is at issue in this adversary proceeding). *See* Commercial Code § 3-203. Neither contract nor assignment can transfer an instrument. *In re Kang Jin Hwang*, 396 B.R. 757, 763 (Bankr. C.D. Cal. 2008), *rev. on other grounds*, 438 B.R. 661 (C.D. Cal. 2010). The concept of transfer by delivery of possession is a fundamental feature of negotiable instruments. *Id.* It is based on the fact that an instrument is a "reified right to payment" that is represented by the instrument itself. Cal. Comm. Code § 3-203, comment 1. Under these circumstances, Dwyer's possession of the instrument was a prerequisite to him enforcing the 2005 Note. *Id.*

Dwyer concedes that he never possessed the 2005 Note. Instead, he argues that the Promissory Note Endorsement transferred the 2005 Note to him, which was sufficient to transfer CFI's entire interest in the 2005 Note and Deed of Trust. Yet, as explained above, the Promissory Note Endorsement cannot transfer a negotiable instrument, and Dwyer's authority is not to the contrary. Dwyer's reliance on *Cockerell v. Title Insur. & Trust Co.*, 42 Cal. 2d 284 (1954) is misplaced. In *Cockrell*, the plaintiff possessed the note. There, the California Supreme Court merely recognized that language assigning rather than endorsing the note, which was written directly on the note itself, was sufficient to transfer

---

[5] While the 2005 Note also refers to a $250,000.00 obligation, the note amount increased to $380,000.00 as a result of the August 2007 Notice of Advance. The court concludes that the Notice of Advance did not render the 2005Note non-negotiable.

[6] While *Veal* addressed the issue of a "person entitled to enforce" and a "holder" of a negotiable instrument for purposes of determining standing for a relief from stay motion, its analysis of these concepts still applies herein.

11

ownership or legal title of the note to the plaintiff who physically possessed it. None of Dwyer's authority holds that a note can be transferred without delivery of possession.

While it is possible under the Commercial Code to convey or assign title to a note without a change of possession, absent delivery of possession, the assignment does not transfer the legal right to enforce it and collect its proceeds. In other words, title to a negotiable instrument is a distinct concept from the right to enforce the instrument. As the comments to the Commercial Code explain:

> X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under § 3-203(a) until it is delivered to Y.

Cal. Comm. Code § 3-203, comment 1. This example closely resembles the circumstances of this case. Thus, assuming aguendo that the Promissory Note Endorsement assigned legal title to the 2005 Note to Dwyer,[7] he did not receive any right to enforce the note against its maker. Accordingly, the court finds that the transfer at issue herein did not occur in October 2007.

The Chapter 11 Trustee alternatively contends that California has created a specific statutory exception to the California Commercial Code provision requiring delivery of possession to effect a transfer, and that this exception - California Business and Professions Code §10233.2 - further demonstrates that CFI did not transfer the 2005 Note to Dwyer in October 2007.

In 1992, the California legislature confronted concerns that real estate brokers in the private mortgage market often retained physical possession of notes and deeds of trust after selling them to one or more private investors or after pledging the notes and deeds of trust to investors as collateral for loans from the investors to the brokers. In the sale scenario, as already noted, negotiable instruments law

---

[7] Whether the Promissory Note Endorsement conveyed CFI's legal title to the 2005 Note is an open question. Unlike the example, the Promissory Note Endorsement did not convey all CFI's rights, title and interest in the note. Rather, the document states only that it is assigning the "beneficial interest" in the note together with money due or to become due. As already noted, however, the right to payment cannot be transferred by assignment. Cal. Comm. Code § 3-203.

12

dictates that the investor/purchaser of a note or an interest therein has no right to enforce that interest absent possession of the note. Further, statutory law governing secured transactions provides that an investor/lender's security interest in a note remains unperfected unless the lender takes possession of the security instrument. Cal. Comm. Code § 9-304(1). Recognizing that it is sometimes impossible and often inconvenient for investors, especially fractional investors, to obtain physical possession of the notes and deeds of trust, the legislature enacted §10233.2 of the California Business and Professions Code. This statute is intended to help investors establish rights in their investments by providing a limited exception to the normal requirement that possession of notes be delivered to the investors in both the sale and secured transaction context. *In re First T.D. & Investments, Inc.*, 253 F.3d 520, 530 (9th Cir. 2001).

Under § 10233.2, when a licensed real estate broker sells a promissory note secured by realty, including any fractional interest therein, or arranges a loan with some or all of the note serving as security, then the concepts of "delivery, transfer and perfection" under either negotiable instruments or secured transactions law, are deemed complete even if the broker retains possession of a promissory note provided that two conditions are met: 1) the note is endorsed or assigned to the purchaser or lender and 2) a deed of trust, an assignment of the deed of trust or other collateral document in favor of the purchaser or lender is recorded in the appropriate county recorder's office.[8] The Chapter 11 Trustee argues that this code section is a comprehensive scheme governing licensed real estate brokers and, as a result, § 10233.2

---

[8]The full text of § 10233.2 provides
> For the purposes of Division 3 (commencing with Section 3101) and Division 9 (commencing with Section 9101) of the Commercial Code, when a broker, acting within the meaning of subdivision (d) or (e) of Section 10131 or Section 10131.1, has arranged a loan or sold a promissory note or any interest therein, and thereafter undertakes to service the promissory note on behalf of the lender or purchaser in accordance with Section 10233, delivery, transfer, and perfection shall be deemed complete even if the broker retains possession of the note or collateral instruments and documents, provided that the deed of trust or an assignment of the deed of trust or collateral documents in favor of the lender or purchaser is recorded in the office of the county recorder in the county in which the security property is located, and the note is made payable to the lender or is endorsed or assigned to the purchaser.

13

is the exclusive and mandatory means for a licensed real estate broker to transfer and perfect an interest in a secured real estate loan to a private investor.

The Chapter 11 Trustee argues that the transaction between CFI and Dwyer falls within § 10233.2, and that under its terms, the 2005 Note and Deed of Trust were not transferred in October 2007. The Chapter 11 Trustee's summarizes the facts as follows: In July 2005, CFI gave Schmidt $250,000.00 and received Schmidt's promissory note and deed of trust in return. Dwyer then gave CFI $250,000.00 on August 3, 2005, believing he would have a 100% interest in the 2005 Note and Deed of Trust, but CFI did not transfer the 2005 Note and Deed of Trust to Dwyer. Instead, CFI held title to, remained the payee of and kept possession of the 2005 Note and was the named beneficiary under the 2005 Deed of Trust. In 2007, shortly after an additional advance increased the Schmidt loan to $380,000.00, CFI gave Dwyer the Promissory Note Endorsement that purported assigned the beneficial interest under the 2005 Note to Dwyer, together with any money due or to become due thereon with interest, but CFI retained possession of the 2005 Note and Deed of Trust in its favor. Under §10233.2, even though CFI retained possession, the 2005 Note could be deemed transferred once it was assigned to Dwyer *and* a deed of trust or an assignment of a deed of trust in favor of Dwyer was recorded. While CFI assigned at least the beneficial interest in the 2005 Note to Dwyer in 2007, the second requirement – recording of the assignment of the deed of trust in his favor – did not occur until more than a year after CFI filed for bankruptcy. Accordingly, the 2005 Note was not transferred to Dwyer in October 2007, but instead occurred within the preference period under section 547(e)(2)(C).

The court disagrees with the Chapter 11 Trustee's Business and Professions Code analysis for the simple reason that no evidence has been offered demonstrating that CFI was a licensed broker. Section 10233.2 only applies to "brokers," which Business and Professions Code §10012 defines as a "licensed" broker. Indeed, this court has noted in earlier CFI decisions that CFI was not a licensed broker. *See In re Cedar Funding, Inc.*, 408 B.R. 299, 304 (Bankr. N.D. Cal. 2009).

So when did CFI transfer its interest in the 2005 Note and Deed of Trust? Despite the convoluted nature of CFI's transactions which so many adversary proceedings have laid bare, the court concludes

14

that under section 547(e), any transfer by CFI to Dwyer occurred within the 90 day preference period. In April 2008, the $380,000.00 note in favor of CFI was replaced with a $440,000.00 note in favor of Dwyer. Although CFI agreed but failed to execute a reconveyance of the 2005 Deed of Trust as part of that transaction, the parties agree that the intent of the transaction was to replace the 2005 Note and Deed of Trust with a new note and deed of trust in Dwyer's favor. The Bankruptcy Code broadly defines the transfer of a debtor's property or interest in property. Among other things, a transfer includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with" property or an interest therein. 11 U.S.C. § 101(54). A transfer need not be made directly by a debtor to fall within the ambit of § 101(54). Several courts have recognized that this comprehensive definition is broad enough to include a release of a debtor's claims or interests. *See e.g., Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1282-83 (9th Cir. 1996)(parting with a claim is enough to constitute a transfer); *Carmel v. River Bank America (In re FBN Food Services, Inc.)*, 185 B.R. 265, 271-72 (N.D. Ill. 1995)(transfer involved 2 separate transactions: debtor's release of its claims against one party and that party's payment to a third party); *In re Zeman*, 2011 WL 1042568, at * 2 (Bankr. W. D. Tex. Mar. 16, 2011). Here, in April 2008, CFI released its continuing interest in and its right to payment of the $380,000.00 due under the 2005 Note in favor of Dwyer's receiving a new $440,000.00 note (which reflected Dwyer's additional $60,000.00 loan proceeds to Schmidt). Under the Bankruptcy Code's broad definition, that is sufficient to constitute a transfer for preference purposes. This transfer occurred well within the 90 day preference period.

Furthermore, in June 2009, Dwyer himself recorded the assignment of deed of trust that he received from Nilsen in October 2007. Perfection of a deed of trust requires recordation. For preference purposes, a transfer is made immediately before the date of the filing of the petition if that transfer is not perfected at the later of: 1) the commencement of the case, or 2) 30 days after such transfer takes effect between the transferor and transferee. 11 U.S.C. § 547(e)(2)( C). To the extent that this act constituted a transfer between CFI and Dwyer, this transfer was neither effective nor perfected as of the commencement of the case, and it thus is deemed to have occurred immediately before CFI's bankruptcy

15

filing - again, within the 90 day preference period. Thus, whether the transfer occurred as part of the 2008 escrow relating to the $440,000.00 note and deed of trust or the post-petition recordation of the 2007 assignment of the 2005 Deed of Trust, the transfer occurred within the preference period.

### III.     The Remaining Elements of a Preference Claim Are Satisfied.

The Chapter 11 Trustee easily establishes the remaining elements of his preferential transfer claim for relief. Until the transfer was completed, Dwyer was a creditor of CFI entitled to the conveyance of the note and deed of trust, which is why the trustee has referred to the transactions as "failed sales." When the transfers eventually occurred, they were clearly on account of antecedent debt because Dwyer had been entitled to the transfer from the time of his various investments. No party questions that CFI was insolvent at the time of the transfer, and the confirmed plan of reorganization demonstrates that Dwyer will receive far less under the confirmed plan than he will if the transfer of the 2005 Note and Deed of Trust is not avoided.

### CONCLUSION

For the reasons explained, summary judgment is granted in favor of the Chapter 11 Trustee and against Dwyer with respect to the first claim for relief for avoidance and recovery of a $380,000.00 preferential transfer. The parties are directed to confer and submit a judgment consistent with this decision.

Good cause appearing, IT IS SO ORDERED.

**** END OF ORDER ****

16

A.P. No. 09-5260

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

**SERVICE LIST**

| | |
|---|---|
| Cecily A. Dumas<br>FRIEDMAN, DUMAS AND SPRINGWATER<br>33 New Montgomery St., Suite 290<br>San Francisco, CA 94105 | Larry Lichtenegger<br>Vincent Catania<br>LAW OFFICE OF VINCENT C. CATANIA<br>215 W. Franklin St., Suite 311<br>Monterey, CA 93940 |